

Order Entered.

**David L. Bissett**
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CLINTON KEITH RODGERS and ) | |
| TRACY LEE RODGERS, ) | Case No. 5:18-bk-01025 |
| ) | |
| Debtors. ) | Chapter 7 |
| ) | |
| ) | |
| CLINTON KEITH RODGERS, ) | |
| TRACY LEE RODGERS, and ) | |
| MARTIN P. SHEEHAN, Chapter 7 Trustee, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary No. 5:20-ap-00015 |
| ) | |
| CHASE BANK USA, N.A., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

JPMorgan Chase Bank, N.A., ("Defendant"), seeks the dismissal of Counts II, III, and IV of the complaint filed against it by Clinton and Tracy Rodgers and Martin P. Sheehan ("Plaintiffs"). Defendant argues that Count II of the complaint fails because its basis, the West Virginia Computer Crime and Abuse Act ("WVCCAA"), does not apply to telephone calls. Similarly, Defendant argues that Count III provides insufficient factual support for the "extreme or outrageous conduct" required to plead Intentional Infliction of Emotional Distress ("IIED"). Regarding Count IV, Defendant contends that dismissal is appropriate because Plaintiffs did not plead this count in a way that distinguishes it sufficiently from their claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA").

In opposition, the Plaintiffs contend that their complaint should survive Defendant's motion to dismiss. Specifically, Plaintiffs assert regarding Count II that the plain text of the

WVCCAA shows that it applies to telephone calls. Regarding Count III, Plaintiffs contend that purported violations of the WVCCPA and WVCCAA sufficiently allege Defendant's extreme and outrageous conduct. Finally, Plaintiffs argue that Defendant's invasion of their privacy was outrageous because it allegedly violated the WVCCPA.

For reasons stated herein, the court will grant the Defendant's motion to dismiss in part (regarding Counts III and IV) and deny the motion in part (regarding Count II).

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b) (incorporating 12(b)(6)). To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). As the Fourth Circuit has explained, the plausibility standard requires a plaintiff "to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility' of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Finally, when courts evaluate a motion to dismiss, they are to (1) construe the complaint in a light favorable to the plaintiff, (2) take factual allegations as true, and (3) draw all reasonable inferences in favor of the plaintiff. 5C Charles Wright & Arthur Miller, Federal Practice and Procedure § 1357 (3d. ed. 2012) (collecting thousands of cases). The court's role in ruling on a motion to dismiss is not to weigh the evidence, but to analyze the legal feasibility of the complaint. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). In fact, the court is "limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus. Inc.*, 637 G.3d 435, 558 (4th Cir. 2011)).

## II. BACKGROUND

As alleged in the complaint, Plaintiffs Clinton and Tracy Rodgers ("the Rodgers") became in arrears to Defendant, which then began debt collection efforts through landline telephone calls to the Rodgers. On November 18, 2016, the Rodgers notified Defendant that they thereby revoked

any previous permission to contact them via their landline telephone. Defendant received this notice by certified mail on November 28, 2016. Plaintiffs allege that Defendant subsequently called the Rodgers by telephone "numerous" times. On February 20, 2018, the Rodgers sent Defendant a 45-day notice letter advising it to preserve all relevant documents and electronically stored information and again to cease contacting them by telephone. The Rodgers subsequently filed for Chapter 7 bankruptcy relief on November 1, 2018. They received their bankruptcy discharge on January 30, 2019, and the Plaintiffs initiated the instant adversary proceeding on March 9, 2020.

Plaintiffs' complaint alleges the following four causes of action related to Defendant's continued collection efforts through telephone calls after the Rodgers withdrew such permission: (1) violations of the WVCCPA (W. Va. Code § 46A-1-101 *et seq.*); (2) violations of the WVCCAA (W. Va. Code § 61-3C-1 *et seq.*); (3) IIED; and (4) a common-law invasion of privacy claim. In response, Defendant filed a partial motion to dismiss Counts II, III, and IV. The matter is now ripe for disposition.

### III. ANALYSIS

In support of its motion to dismiss Count II, Defendant argues that the WVCCAA does not apply to landline telephone calls, asserting that the "plain language of the statute" clarifies that the WVCCAA applies only to non-voice data. Rather, it contends that the West Virginia Telephone Harassment Statute ("WVTHS"; W. Va. Code § 61-8-16) regulates such calls. Regarding Count III, Defendant argues that Plaintiffs insufficiently pleaded facts showing the extreme or outrageous conduct necessary for IIED. A creditor seeking payment of a debt does not qualify as extreme or outrageous conduct, according to Defendant. Concerning Count IV, Defendant asserts that the court must dismiss Count IV because an invasion of privacy must be "highly offensive to a reasonable person," which the Plaintiffs failed to sufficiently plead. Additionally, Defendant argues that Plaintiffs failed to plead a cause of action separate from the WVCCPA.

Plaintiffs respond regarding Count II by accusing the Defendants of selectively citing the WVCCAA. Relying upon *Hartley v. 21st Mortg. Corp.*, No. 3:17-0619, 2017 U.S. Dist. Lexis 159640 (S.D.W. Va. Sept. 28, 2017), they contend that the plain text of the statute establishes its relevance to telephone calls. Concerning Count III, Plaintiffs argue that alleged violations of the WVCCPA and WVTHS, which can carry criminal penalties, were intended to or recklessly caused

the Rodgers' emotional distress. Finally, Plaintiffs argue regarding Count IV that Defendant's alleged invasions of privacy were offensive because they occurred "in violation of the *WVCCPA*."

### A.  COUNT II

The WVCCAA makes it unlawful for anyone to use a "computer, mobile phone, personal digital assistant or other electronic communication device" to contact another after being asked to stop.  W. Va. Code § 61-3C-14a(a).[1] An "electronic communication device" includes the following:

> a *telephone*, wireless phone, computer, pager, or any other electronic or wireless device which is capable of transmitting a document, image, voice, e-mail or text message using such device in an electronic, digital or analog form from one person or location so it may be viewed or received by another person or persons at other locations.

W. Va. Code § 61-3C-14a(b)(1) (emphasis added). Additionally, the WVCCAA provides that the "use" of these devices "includes, but is not limited to," electronic methods of communication and non-voice data. W. Va. Code § 61-3C-14a(b)(2). Based on the WVCCAA's inclusion of telephones and analog forms of communication in its definitions, the District Court for the Southern District of West Virginia held that an argument that the statute excludes telephone calls "falls short." *Hartley*, 2017 U.S. Dist. Lexis 159640, at *11–13 (reasoning that if the statute did not include telephone calls, the inclusion of such terms would be meaningless, contrary to usual canons of statutory construction). The court finds the District Court's analysis on this point to be well reasoned and persuasive. Despite Defendant's argument to the contrary, the court is confident that the Plaintiff states a plausible claim in Count II.

Based upon the *Hartley* court's sound reasoning, the court perceives no need to address the matter further and will deny Defendant's motion to dismiss Count II.

### B.  COUNT III

A claim for IIED must include the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4)

---

[1] With respect to creditors' contact of debtors, the WVCCAA provides explicitly that contact must violate the WVCCPA in order to violate the WVCCAA. W. Va. Code § 61-3C-14a(a)(2).

that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Manning v. Meadows*, No. 17-0798, 2018 W. Va. Lexis 599, at *7–8 (W. Va. Oct. 12, 2018) (quoting syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998)). Tortious, malicious, or even criminal conduct may not be enough to be considered extreme and outrageous. *Travis*, 504 S.E.2d at 425 (quoting *Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E.2d 149, 156–57 (W. Va. 1995) (quoting *Restatement (Second) of Torts*, § 46 cmt. d (1965)).

The first inquiry in adjudicating an IIED claim is to determine whether "the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress." Syl. pt. 4, *Travis*, 504 S.E.2d at 419. In cases where a debtor alleges IIED due to harassment from a creditor, courts generally require factual allegations regarding the frequency, number, timing, and nature of the alleged communications to survive a motion to dismiss. *See, e.g.*, *Baldwin v. Wells Fargo Fin. Nat'l Bank*, No. 3:16-4841, 2017 U.S. Dist. Lexis 1264, at *2, 8–10 (S.D.W. Va. Jan. 5, 2017) (determining that since the plaintiffs received a large number of calls from the defendant, including calls that occurred daily or multiple times per day, they had met the plausibility standard); *Blackburn v. Consumer Portfolio Servs.*, No. 2:11-cv-00401, 2012 U.S. Dist. Lexis 66784, at *1–2, 9–10 (S.D.W. Va. May 14, 2012) (finding that a plaintiff's claim alleging a creditor contacted her three to four times per day, at inconvenient times, and more than 180 times after she made defendant aware she was represented by an attorney was not a "formulaic recitation of the elements of a cause of action"); *Doss v. Well [sic] Fargo Bank, N.A. (In re Doss)*, No. 3:16-ap-03010, 2017 Bankr. Lexis 343, at *13 (Bankr. S.D.W. Va. Feb. 7, 2017) (finding that a plaintiff who did not describe the frequency, number, or temporal distribution of a creditor's phone calls did not satisfy the requirement for extreme and outrageous conduct necessary for IIED). As a result, proving that conduct rises to the level of being extreme and outrageous is "difficult." *Hines v. Hills Dept. Stores, Inc.*, 454 S.E.2d 385, 390 (W. Va. 1994).

In addition to establishing that defendants' conduct is extreme and outrageous, plaintiffs also must include sufficient detail to document their emotional distress. Such emotional distress must be "so severe that no reasonable person could be expected to endure it." *Manning*, 2018 W. Va. Lexis 599, at *8. This requirement applies equally to debtors claiming to have experienced emotional distress from creditors' actions. *See, e.g.*, *Patrick v. PHH Mortg. Corp.*, 937 F. Supp.

5

2d 773, 790–91 (N.D.W. Va. 2013) (finding that a debtor plaintiff alleging IIED from creditor's actions had failed to plead enough facts to substantiate the severity of plaintiffs' emotional distress); *Travis v. JP Morgan Chase Bank, N.A.*, No. 1:12-CV-89, 2012 Lexis 109193, at *11–13 (N.D.W. Va. Aug. 6, 2012) (same).

Here, the Plaintiffs did not plead why or how Defendant's behavior was extreme and outrageous. They have simply alleged such conduct is potentially criminal. Even assuming the validity of Plaintiffs' allegations in that regard, this does not make such behavior extreme or outrageous as a matter of law.  Moreover, Plaintiffs do not provide basic information regarding the frequency, number, timing, and nature of the alleged communications from Defendant that would explain why the contact meets this legal standard. Merely alleging continued illegal contact after Defendants were informed that Plaintiffs were represented by an attorney is insufficient. Similarly, Plaintiffs do not allege in enough detail why Defendant's behavior caused emotional distress "so severe that no reasonable person could be expected to endure it." Instead, they merely make the bald allegation. Because Plaintiffs failed to meet their burden of establishing Defendant's conduct is extreme and outrageous and that they suffered emotional distress as a result, the court will grant Defendant's motion to dismiss Count III without prejudice.

### C. COUNT IV

West Virginia law recognizes four varieties of invasion of privacy claims under the common law:

> (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.

Syl. pt. 6, *Tabata v. Charleston Area Med. Ctr., Inc.*, 759 S.E.2d 459, 461 (W. Va. 2014) (quoting syl. pt. 8, *Crump v. Beckley Newspapers*, 320 S.E.2d 70 (W. Va. 1983)). An invasion of privacy must be "highly offensive to a reasonable person." *See Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d. 873, 886 (S.D.W. Va. 2014) (citing *Restatement (Second) of Torts*, §652B cmt. d.(1977)) ("It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded"); *see also Patrick*, 937 F. Supp. 2d at 791–92 (dismissing plaintiffs' claim of invasion of privacy because they did not allege creditor's telephone calls were

placed at inconvenient or annoying times or that there was a large volume of calls, and so plaintiffs did not allege an unreasonable intrusion into their privacy).

If a claim is actionable under the WVCCPA, a plaintiff can only plead a common law claim based on the same or similar set of facts if she can prove the common law claims independently of the WVCCPA. West Virginia law does not bar a plaintiff's right to bring a common law claim if a claim could be brought under the WVCCPA based on the same facts. It merely requires that "direct allegations of fraud or negligence [must] exist separate[ly]" from the WVCCPA in order to be actionable. Syl. pt. 1, *Casillas v. Tuscarora Land Co.*, 412 S.E.2d 792, 792 (W. Va. 1991). To be "separate" from the WVCCPA means that the "common law claims must be supported by the particular facts of the case, and these claims must be separate or distinct from the claims contained in the Act." *Pemberton v. US Bank*, No. 5:11-cv-00630, 2012 U.S. Dist. Lexis 1717, at *8 (S.D.W. Va. Jan. 5, 2012). This interpretation of *Casillas* is now commonplace. *See, e.g.*, *Huffman v. Branch Banking & Trust Co.*, No. 3:16-8637, 2017 U.S. Dist. Lexis 75070, at *19 (S.D.W. Va. May 17, 2017) (finding that common law negligence claims and WVCCPA claims "can involve the same set of facts, but the negligence claim must be able to exist separately from the WVCCPA claim"); *McNeely v. Wells Fargo Bank, N.A.*, No. 2:13-cv-25114, 2014 U.S. Dist. Lexis 170784, at *17–18 (S.D.W. Va. Dec. 10, 2014) (finding that a common law negligence claim requires proof of a special relationship to be separate from the WVCCPA).

While *Casillas* did not require that a common law invasion of privacy claim in particular be pleaded separately from the WVCCPA, this follows from the language of *Pemberton* cited above. *See Baldwin*, 2017 U.S. Dist. Lexis 1264, at *13–14 (finding that "[a]lthough Plaintiffs' complaint tracks some of the language of the [WVCCPA], the factual allegations state a plausible claim for invasion of privacy on its own"). Consequently, under West Virginia law a plaintiff can allege complementary claims under the WVCCPA and common law invasion of privacy based on a similar fact pattern, provided the plaintiff alleges facts sufficient to make the invasion of privacy claim plausible on its own terms.

Here, Plaintiffs allege an invasion of privacy in terms of "an unreasonable intrusion into the seclusion of another." By simply arguing that Defendant's telephone calls were made "in violation of the *WVCCPA*," however, the Plaintiffs fail to plead a claim "separate or distinct" from the claims under that statute. Merely because an act may have violated the WVCCPA does not make it "unreasonable" or "highly offensive to a reasonable person," thus failing to meet the

7

appropriate pleading standard for a common law claim for invasion of privacy. Though they maintain Defendant placed "numerous" telephone calls, without more information as to the frequency, number, timing, and nature of these calls, Plaintiffs have not met their burden of the alleging the unreasonable or offensive contact necessary for an invasion of privacy claim. Accordingly, the court will dismiss Plaintiffs' claim under Count IV without prejudice.

### IV. CONCLUSION

Based on the foregoing, the court will enter a separate order granting Defendant's motion to dismiss Counts III and IV of Plaintiffs' complaint but denying it as to Count II. Regarding Counts III and IV, the dismissal will be without prejudice to the Plaintiffs amending their complaint.